[Cite as *In re J.N.*, 2022-Ohio-4373.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: J.N. | : | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 2022 CA 00033 |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING: Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case No. F2018-0424

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: December 6, 2022

APPEARANCES:

For - Appellee

WILLIAM C. HAYES
Licking County Prosecutor
J. BRANDON PIGG
Assistant Prosecutor
20 South Second Street, 4th Floor
Newark, OH 43055

For - Appellant

ROBIN LYN GREEN
Box 157
Newark, OH 43058

*Gwin, P.J.*

{¶1}    Mother S.N. appeals the May 9, 2022 Judgment Entry entered by the Licking County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's February 2, 2021 decision, and approved and adopted said decision granting permanent custody of the minor child J.N.[1] to the appellee Licking County Jobs and Family services [ "LCJFS"] as the order of the court.

*Facts and Procedural History*

{¶2}    Mother is the biological mother of J.N. (b. Jan 23, 2014).  1T. at 14.[2] She has three other children.  Id. The case was commenced by the filing of a complaint by LCJFS alleging dependency on June 27, 2018.  On August 29, 2018, the juvenile court found J.N. to be a dependent child and placed the child into the temporary custody of LCJFS.  [Docket Entry No. 31].  The allegations of the complaint concerned Mother's substance abuse, domestic violence, financial and housing instability, and mental health concerns.  A case plan was developed which called for substance abuse treatment, drug and alcohol testing, maintaining a stable home and employment, mental health counseling, and visitation.  1T. at 66; State's Exhibit A. Referrals were made by the agency to facilitate achievement of case plan objectives.  The objectives identified for Mother to address the concerns included, completing a drug and alcohol assessment and mental health assessment, as well as following all recommendations; submitting to random drug screens; addressing concerns of anger and domestic violence; and

---

[1] See, OH ST Supp. R. 44(H) and 45(D) concerning the use of personal identifiers.
[2] For clarity, the permanent custody hearing transcript will be referred to as, "__T.__," signifying the volume and the page number.

obtaining safe and stable housing and income sufficient to meet the needs of the child. 1T. at 68.

{¶3} Semi-annual review hearings were conducted by the court. On May 21, 2019, LCJFS filed a motion to extend temporary custody. [Docket Entry No. 44]. By Judgment Entry filed July 29, 2019, the juvenile court granted the request. [Docket Entry No. 40].

{¶4} On November 26, 2019, LCJFS filed a motion for permanent custody. The magistrate conducted a hearing on LCJFS's motion for permanent custody on January 8, 2021, and January 27, 2012.

*Permanent Custody Hearing*

**Mother's history of substance abuse**

{¶5} Mother testified that she is "definitely an addict 100 percent". 1T. at 9. Mother testified to a lengthy history of abuse with alcohol, methamphetamine, heroin, marijuana, and unspecified painkillers prescribed for a broken back. 1T. at 9-11, 156; 160-161. Mother testified that she had been prescribed Suboxone for eleven years at the time of her testimony. Id. Mother had been seeing a doctor by the name of Dr. Masone until approximately August of 2017. 1T. at 159. She originally received her Suboxone prescription through Dr. Masone. 1T. at 160. Her present physician and substance abuse counselor, Dr. Milroy Samuel of Complete HealthCare for Women has continued the prescription for Suboxone. Dr. Samuel testified that Mother tested positive for marijuana and amphetamine on January 7, 2021, the day before the permanent custody hearing. 1T. at 38.

**{¶6}** Mother testified that she has used heroin several years ago and has more recently used methamphetamine, with her last use being sometime in August 2020. 1T. at 10-11. She also acknowledged that, if tested, she believes she would be positive for marijuana. 1T. at 10. Mother testified, she has "fallen off the wagon a lot," and, for the last two years since the kids had been taken, fell off "hard core." 1T. at 11.

**{¶7}** Mother testified that she also attends AA meetings. 1T. at 15. Due to COVID-19 the meetings are on-line and called "In This Room." 1T. at 164-165. Mother only attended these a few times. 1T. at 165. She has not received any other substance abuse treatment. 1T. at 16.

**{¶8}** Bridget Lorenz-Lemberg, the lab director and toxicologist for Forensic Fluids Laboratories, identified State's Exhibits E 1-3 as lab results for drug screens. 1T. at 48, 54. A drug screen from February 24, 2020, was collected by the ongoing caseworker Amy Cline. 1T. at 54-55. This screen was negative for illegal drugs, but was positive for alcohol. Id. at 55. Another drug screen was collected on November 19, 2019. Id. at 55-56. Mother was positive for methamphetamine, marijuana, and buprenorphine on this date. Id. at 56. The third drug screen was collected on August 6, 2020. 1T. at 57. Mother was positive for methamphetamine and alcohol on this date. Id. at 57-58. Drug screens were also collected on December 6, 2019; September 6, 2019; and July 17, 2019, and all of those were negative for drugs. 1T. at 61-62. Andrew Elsworth, Mother's boyfriend, had a drug screen on August 6, 2020. 1T. at 58. Elsworth was positive for methamphetamine and alcohol on this screen. Id. at 59.

**{¶9}** In order to address Mother's substance abuse problems, LCJFS provided Mother with information on the Licking County Alcohol Abuse Program ["LAPP"]. 1T. at

77; 79. Mother did attempt to go to LAPP, but was discharged unsuccessfully in December 2018. 1T. at 77-78.

### Mother's housing

**{¶10}** Mother resides with her grandmother, adult daughter, and sometimes boyfriend/ accountability partner Andrew Ellsworth. 1T. at 149; 175-176. Mother and Mr. Ellsworth have an on-again, off-again relationship, and they at times fight after drinking together. Mother lives in a basement apartment of the home. 1T. at 151. Mother does chores in lieu of paying cash rent. 1T. at 21; 155-156. She described the house as having four bedrooms upstairs, and indicated that the basement is a finished apartment with a kitchen, living room, bedrooms, and bathrooms. 1T. at 150.

**{¶11}** In November of 2020, Mother was found guilty of domestic violence stemming from an event with her adult daughter. 1T. at 19. Due to these concerns, the Agency has made referrals for Mother to obtain independent housing.

### Mother's criminal history

**{¶12}** Mother admitted that she received a prison sentence as a result of her conviction for aggravated menacing in 2008. 1T. at 20-21. Mother admitted to prior convictions for domestic violence, criminal damaging, and drug paraphernalia in 2011; disorderly conduct in 2010; and violating a protection order and telecommunications harassment in 2008. 1T. at 20. In November of 2020, Mother was found guilty of domestic violence stemming from an event with her adult daughter. 1T. at 19.

**{¶13}** J.N. was born while Mother was incarcerated. 1T. at 177. J.N. was taken in by the maternal grandmother while Mother was still in prison. 1T. at 178.

### Mother's employment history

{¶14} Mother did obtain employment for over six months with S&J Painting, but has been inconsistent since then. 1T. at 22-23. Mother did report working for Taco Bell on call in June of 2020, but has reported being unemployed since December 2020. 1T. at 24; 76; 156-157. Mother admitted that she is currently unemployed. 1T. at 23-24; 156.

### Mother's visitation

{¶15} Mother does have supervised visits at the agency with J.N. 1T. at 80. Over the last two years, Mother has missed six visits and has canceled a few more. Id. at 86. Overall, visitation between Mother and J.N. go well. 1T. at 92. However, in a visit in February 2020, the ongoing caseworker was called to a visit and spoke to Mother. 1T. at 81. The caseworker testified that Mother was obviously intoxicated - she had glassy eyes and was slurring her words. 1T. at 81-82. When questioned outside the presence of the children, Mother admitted that she had been drinking prior to the visit and was drunk. Id. at 83. Mother was allowed to re-enter the visit but had to be removed a short time later when she started yelling and screaming. Id.

### Relative placement

{¶16} S.F., Mother's step-father, testified he was married to the maternal grandmother for 28 years and considers Mother to be a daughter. Id. at 5-6. He has had custody of one of Mother's other daughters, for approximately five to six years. This occurred while Mother was incarcerated. That child is now 11 years old. 2T. at 8.

{¶17} S.F. testified that he works at High Tech Material Handling, where he travels throughout the state and repairs forklifts. 2T. at 10. He testified that he had contacted the agency about custody of J.N. Id. at 11-12. He believes J.N. knows him, as she lived

with them for approximately three years. Id. at 15. He did visit J.N. two or three times at the agency in 2018. Id. He further testified that Mother just recently made him aware there was a guardian ad litem ["GAL"] assigned to the case, but never provided him with the name or phone number of the GAL. When asked, he stated that he does not see Mother as a threat to J.N. despite his knowledge of her substance abuse issues. S.F. also testified that he was aware of Mother's history of domestic violence and convictions for the offense. S.F. indicated that his current girlfriend and her daughter also live with him. They have been in the home since November or December 2018 and do not know J.N. Id. He admitted that he does have a DUI from November 2017, and a domestic violence conviction from the early 1990's. He does not know if his girlfriend has any criminal convictions.

{¶18} The magistrate found that,

> However, when [Mother] made unconfirmed allegations against [S.F.] the Agency did not pursue any further investigation into his potential for placement. While this is of concern to the Court, it must be noted that no motion for custody was filed on behalf of [S.F.].

*Magistrate's Decision,* Feb 2, 2021 at p. 3.

## Magistrate's decision

{¶19} After analyzing the applicable law, the magistrate ordered Mother's residual parental rights be terminated and permanent custody of J.N. be granted to LCJFS. The magistrate found J.N. had been in the temporary custody of LCJFS for more than twelve months of a consecutive 22-month period, and J.N. could not be placed with

Mother within a reasonable period of time and should not be placed with Mother. The magistrate also found it was in J.N.'s best interest to grant permanent custody to LCJFS.

{¶20} Mother filed objections to the magistrate's decision on February 16, 2021. [Docket Entry No. 155].

{¶21} On April 2, 2021, Mother's attorney filed a Notice of Withdraw of Objection on behalf of Mother and a Motion to Withdraw as Counsel. Said requests were granted by Judgment Entry filed on April 8, 2021.

{¶22} Mother subsequently obtained alternative counsel. On May 10, 2021, counsel on behalf of Mother requested that the Notice of Withdraw filed April 2, 2021 be set aside and that Mother be permitted to proceed with her objection. The juvenile court granted the motion and gave Mother fourteen days to file supplemental objections as the transcript had been filed on March 19, 2021. On June 2, 2021, Mother timely filed a supplemental objection. On June 7, 2021, the state timely filed a response to Mother's supplemental objections.

### Trial court's decision

{¶23} Via Judgment Entry filed May 9, 2022, the juvenile court overruled Mother's objections. The court found,

> The Magistrate's Decision, filed February 2, 2021, was not against the manifest weight of the evidence. The Magistrate did not err in finding that [J.N.] could not be placed with [Mother] or [Father] within a reasonable time or should not be placed with [Mother]. Clear and convincing evidence was presented that the Agency made reasonable case planning and diligent efforts to assist [Mother] to remedy the problems that initially caused [J.N.]

to be placed outside the child's home and that [Mother] failed continuously and repeatedly to substantially remedy said conditions.

* * *

Clear and convincing evidence was presented that at the time of the filing of the Motion for Permanent Custody [J.N.] had been in the temporary custody of the Agency for twelve (12) or more months of a consecutive twenty-two (22)-month period. Clear and convincing evidence was also presented that a grant of permanent custody of [J.N.] to the Agency is in the child's best interest. Thus, permanent custody should be granted for both reasons.

*Opinion/Judgment Entry,* May 9, 2022 at 16-17.

*Assignment of Error*

{¶24} Mother raises one Assignment of Error:

{¶25} "I. THE TRIAL COURT'S ENTRY GRANTING PERMANENT CUSTODY TO THE AGENCY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

*Law and Analysis*

{¶26} Initially we note a deficiency in Mother's appellate brief; it does not comply with App.R. (A)(7), which provides,

The appellant *shall include in its brief*, under the headings and in the order indicated, *all of the following*: * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with*

*citations* to the *authorities, statutes*, *and parts of the record on which appellant relies*. The argument may be preceded by a summary.

* * *

(D) References in Briefs to the Record. References in the briefs to parts of the record shall be to the pages of the parts of the record involved; e.g., Answer p. 7, Motion for Judgment p. 2, Transcript p. 231. Intelligible abbreviations may be used. If reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages of the transcript at which the evidence was identified, offered, and received or rejected.

Emphasis added.

{¶27} Because Mother fails to properly reference portions of the transcript supporting her claims, Mother cannot demonstrate the claimed error. *See Daniels v. Santic,* 11th Dist. Geauga No. 2004-G-2570, 2005-Ohio-1101, ¶13-15. *See, also*, App.R. 12(A)(2) and 16(A)(7); *Graham v. City of Findlay Police Dept.* 3rd Dist. Hancock No. 5-01-32, 2002-Ohio-1215 at *4 (stating, "[t]his court is not obliged to search the record for some evidence of claimed error. * * * Rather, an appellant must tell the appellate court specifically where the trial court's alleged errors may be located in the transcript"); *State ex rel. Petro v. Gold,* 166 Ohio App.3d 371, 2006-Ohio-943 (10th Dist.), ¶ 94, *appeal not allowed*, 110 Ohio St.3d 1439, 2006-Ohio-3862, *reconsideration denied*, 111 Ohio St.3d 1418, 2006- Ohio-5083; *Porter v. Keefe,* 6th Dist. Erie No. E-02-018, 2003-Ohio-7267, ¶ 109-113.

{¶28}  According to App. R. 12(A)(2), "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)." An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393(1988); *Abon, Ltd. v. Transcontinental Ins. Co.*, 5th Dist. Richland No. 2004-CA-0029, ¶100; *State v. Miller*, 5th Dist. Ashland No. 04-COA-003, 2004-Ohio-4636, ¶41.  "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." *Uncapher v. Baltimore & Ohio Rd. Co.*, 127 Ohio St. 351, 356, 188 N.E. 553, 555(1933).

{¶29}  In addition, this Court has held that our district will no longer allow *Anders* briefs to be filed in cases involving termination of parental rights.  *In the matter of K.M.,* 5th Dist. Tuscarawas No. 2019 AP 08 033, 2020-Ohio-350, ¶17.  *See also, In re: N.C. and A.C.,* 2nd Dist. Montgomery Nos. 28105, 28117, 2019-Ohio-567, ¶80-89.  (Discussing the use of *Anders* briefs in permanent custody cases).

{¶30}  In the interest of justice, we shall attempt to address Mother's assignment of error.

## Standard of Appellate Review

{¶31}  "[T]he right to raise a child is an 'essential' and 'basic' civil right."  *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972).  A parent's interest in the care, custody, and management of his or her child is "fundamental."  *Id.*; *Santosky v. Kramer*, 455 U.S.

745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.* An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

{¶32} The Ohio Supreme Court has delineated our standard of review as follows, "clear and convincing evidence" is "[t]he measures or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986). In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression, which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the*

> *truth and what should be rejected as false.*  See *Rice v. City of Cleveland*,
>
> 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478.  (Emphasis added).  A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established."  *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

### Requirements for Permanent Custody Awards

{¶33}  R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody.  R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶34}  Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the
>
> temporary custody of one or more public children services agencies or
>
> private child placing agencies for twelve or more months of a consecutive
>
> twenty-two-month period, or has not been in the temporary custody of one
>
> or more public children services agencies or private child placing agencies
>
> for twelve or more months of a consecutive twenty-two-month period if, as

described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶35} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**Temporary Custody for at least 12 out of a consecutive 22-month**

**period-R.C. 2151.414(B) (1) (d).**

**{¶36}** The "12 of 22" provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child. *In re C.W.,* 104 Ohio St.3d 163, 2004–Ohio–6411, 818 N.E.2d 1176, ¶22. Through the "12 of 22" provisions in the permanent-custody statutes, the legislature provides parents with 12 months to work toward reunification before an agency can institute a permanent-custody action asserting R.C. 2151.414(B)(1)(d) grounds. Id.

**{¶37}** "Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B) (1) (d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period." *In re: C.W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176 at paragraph one of the syllabus. When calculating this time period, the Court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." Id. at 167, 2004-Ohio-6411, 818 N.E.2d at 1180, ¶26.

**{¶38}** R.C. 2151.414(B)(1)(e) states that, "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

**{¶39}** J.N. was removed from Mother's home June 26, 2018. Pursuant to R.C. 2151.414(B)(1)(e) sixty days from June 26, 2018 would be Saturday, August 25, 2018. The juvenile court adjudicated J.N. a dependent child by Judgment Entry filed August 29, 2018. [Docket Entry No. 31].

**{¶40}** Accordingly, the "earlier date" that J.N. will be deemed to have enter the temporary custody of LCJFS for purposes of R.C. 2151.414(B)(1)(d) is August 25, 2018. LCJFS filed the Motion for Permanent custody on November 26, 2019, 1 year, 3 months and 1 day after J.N. is considered to have entered the temporary custody of LCJFS.

**{¶41}** Accordingly, the trial court correctly found that J.N. had been in the temporary custody of the LCJFS for over twelve months of a consecutive 22-month period.

**{¶42}** As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

**{¶43}** Because Mother has not challenged the twelve of twenty-two-month finding as to the child, we would not need to address the merits of Mother's assignment of error. However, even if we consider Mother's arguments the trial court did not err in determining the child cannot be placed with Mother at this time or within a reasonable period of time.

**Parental Placement within a Reasonable Time– R.C. 2151.414(B)(1)(a).**

**{¶44}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher,* 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

**{¶45}** R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code that one or more of the following exist as to each of the child's

parents, the court shall enter a finding that the child cannot be placed with

either parent within a reasonable time or should not be placed with either

parent:

(1) Following the placement of the child outside the child's home and

notwithstanding reasonable case planning and diligent efforts by the agency

to assist the parents to remedy the problems that initially caused the child

to be placed outside the home, the parent has failed continuously and

repeatedly to substantially remedy the conditions causing the child to be

placed outside the child's home.  In determining whether the parents have

substantially remedied those conditions, the court shall consider parental

utilization of medical, psychiatric, psychological, and other social and

rehabilitative services and material resources that were made available to

the parents for changing parental conduct to allow them to resume and

maintain parental duties.

* * *

(16) Any other factor the court considers relevant.

**{¶46}** As set forth above, the trial court's findings are based upon competent credible evidence.  The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial.  The magistrate was in the best position to determine the credibility of the witnesses.

**{¶47}** The juvenile court found that LCJFS had made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for J.N. to return

home safely to Mother's home. In the instant case the trial court cited R.C. 2151.414(B)(1)(d) ("12 of 22"); R.C. 2151.414(E)(1) (reasonable efforts) and R.C. 2151.414(E)(4) (failure to remedy conditions).

{¶48} The record supports the juvenile court's finding that Mother has not shown consistent sustained progress to have the child returned to her custody. She continues to suffer with alcohol and illegal drug abuse. It does not appear that Mother has been able to apply any behavioral changes that she has attempted to learn. Despite offering numerous services, Mother was unable or unwilling to mitigate the concerns that led to the child's removal. As set forth in our *Statement of the Facts and Case, supra*, we find there was sufficient and substantial competent evidence Mother failed to remedy the problems which initially caused the removal of J.N. from her home. The case plan developed by the Agency also identified the need for Mother to engage in mental health treatment. 1T. at 10. Aside from the unsuccessful termination in LAPP in 2018, Mother did not seek any mental health programming as recommended by the Agency. Id.

{¶49} A parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification. The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. *In re Shchigelski*, 11th Dist. Geauga No. 99–G–2241, 2000 WL 1568388 (Oct. 20, 2000); *In re McKenzie*, 9th Dist. Wayne No. 95CA0015, 1995 WL 608285(Oct. 18, 1995). A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed—the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to

a social services agency. *In re J.L.,* 8th Dist. No. 84368, 2004–Ohio–6024, ¶ 20; *In re Mraz*, 12th Dist. Nos. CA2002–05–011, CA2002–07–014, 2002–Ohio–7278. In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

{¶50} Mother loves and is bonded with her child. However, the evidence demonstrated the very little successful efforts Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of Mother's compliance with aspects of her case plan, she was still not able to be a successful parent to the child.

{¶51} We find there is competent and credible evidence to support the trial court's determination that J.N. cannot be placed with Mother within a reasonable time or should not be placed with Mother.

### Reasonable Efforts

{¶52} Mother further contends the finding that LCJFS made reasonable efforts to reunify the child with Mother is against the manifest weight of the evidence.

{¶53} The Supreme Court of Ohio in *In re C.F.*, 113 Ohio St. 3d 73, 78, 862 N.E. 2d 816, 821(2007) noted,

> [N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment,

separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151. 01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151. 412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151. 413(D) - the '12 months out of 22 rule'- '[i]f reasonable efforts to return the child to the child's home are required under section 2151. 419' and the agency has not provided the services required by the case plan.

{¶54} A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992). The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458. The child's health and safety is paramount in determining whether reasonable efforts were made. *In re R.P.*, 5th Dist. Tuscarawas No. 2011-Ohio-5378.

{¶55} R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home."

Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."

{¶56} However, even where a trial court has failed to include in its judgment entry, the findings contemplated by R.C. 2151.419(B)(1) we have found that the ultimate issue is the reasonableness of the Department's efforts, and have concluded those efforts may be determined from the record. *In the matter of Kell/Bess Children*, 5th Dist. No. 97CA0278, 1998 WL 401767(Mar. 23, 1998); *Hunt v. Ickes*, 5th Dist. Tuscarawas No. 2014 AP 08 0032, 2015-Ohio-309, ¶19.

{¶57} We find there is competent and credible evidence to support the trial court's determination that LCJFS efforts were reasonable and diligent under the circumstances of the case. We find that the record supports that LCJFS was working toward the goal of reunification. We find no evidence of dishonest purpose, conscious wrongdoing, or breach of duty on the part of LCJFS.

{¶58} Having reviewed the record, we find that LCJFS made a good faith effort to reunify Mother and her child. Furthermore, the record contains clear and convincing evidence to support the court's determination that the child could not be placed with Mother.

**The Best Interest of the Child**

{¶59} An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the

child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26.

{¶60} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶61} The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

{¶62} No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶33.

**{¶63}** A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

**{¶64}** No evidence was presented that J.N. has a relationship with any extended family members. J.N. has been placed with the same foster family since her removal and all of her needs are being met. 1T. at 88-90. J.N.'s foster family is interested in pursuing her adoption Id. The only relative to be mentioned by either parent for her placement was Mother's sister who was contacted and did not demonstrate an interest in pursuing the placement of J.N. 1T. at 87-88. S.F. did not file a motion requesting legal custody of J.N. No other person has filed a motion for legal custody of the child. J.N.'s need for a legally secure permanent placement is immense and cannot be achieved without a grant of permanent custody. Finally, the Guardian ad Litem recommended that the permanent custody of the child be granted to the Agency. 2T. at 235-238. Nothing in the record demonstrates that the child would benefit from giving Mother more time to work on her case plan. Nothing in the record indicates that a grant of additional time to Mother would result in a different outcome.

**{¶65}** In short, the juvenile court's judgment entry demonstrates that the court satisfied its statutory duty to consider the best interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

## Conclusion

**{¶66}** For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore J.N. could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to LCJFS was in J.N.'s best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶67}** Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Mother's sole assignment of error, and affirm the decision of the Licking County Court of Common Pleas, Juvenile Court Division.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur