[Cite as *In re A.D.*, 2023-Ohio-1731.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: A.D. & Z.D.

:    JUDGES:
:
:    Hon. John W. Wise, P.J.
:    Hon. Patricia A. Delaney, J.
:    Hon. Craig R. Baldwin, J.
:
:    Case No. CT2022-0091
:
:
:
:
:
:    O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Muskingum County Court of Common Pleas, Juvenile Division, Case Nos. 21930238 & 21930239 |
| | |
| JUDGMENT: | AFFIRMED |
| | |
| DATE OF JUDGMENT ENTRY: | May 22, 2023 |

APPEARANCES:

For Appellee Muskingum Co.
Adult and Child Protective Services:

RONALD L. WELCH
MUSKINGUM CO. PROSECUTOR
JOHN CONNOR DEVER
27 North Fifth St., P.O. Box 189
Zanesville, OH 43702

For Appellant Mother C.A.:

RICHARD D. HIXSON
3808 James Court, Suite 2
Zanesville, OH 43701

Guardian Ad Litem:
ANDREW RUSS
P.O. Box 520
Pickerington, OH 43147-0520

*Delaney, J.*

{¶1} Appellant C.A. ("Mother") appeals from the November 23, 2022 "Entry Terminating Parental Rights and Granting Permanent Custody of the Minor Child to Muskingum County Children's Services."  Appellee is Muskingum County Adult and Child Protective Services ("Agency").

**FACTS AND PROCEDURAL HISTORY**

{¶2}  The subjects of this case are Mother's biological children A.D. (born 2014) and Z.D. (born 2015). Father D.D. is not a party to the instant appeal.  The following presents the lengthy history of the case in chronological order, with Mother's progress on the case plan followed by relapses and setbacks.

{¶3} The Agency's involvement began in September 2016 with concerns of physical abuse of Z.D., who was 8 to 9 months old at the time. The child was presented to Genesis Hospital, and transferred to Nationwide Children's Hospital, with a diagnosed traverse buckle fracture of the right arm, as well as large irregular bruising of the thighs. Nationwide reported the injuries as non-accidental; Mother gave several different explanations how they occurred to the Agency and law enforcement. Mother was ultimately charged with child endangering and falsification, and was found guilty upon entering an Alford plea.

{¶4}  The Agency's original complaint was filed on September 19, 2016, and both children were placed in the temporary custody of the Agency after an expedited/emergency hearing on September 19, 2016. The original complaint was dismissed and new complaints were filed in December 2016; following an

expedited/emergency hearing on December 16, 2016, the children were continued in the temporary custody of the Agency.

{¶5} On February 27, 2017, the trial court conducted an adjudicatory and dispositional hearing. Both minor children were found to be dependent, and Z.D. was also found to be neglected. Both children were continued in the temporary custody of the Agency.

{¶6} In March 2017, Mother completed a mental health assessment at All Well; she began a counseling program but stopped attending.

{¶7} In February 2018, Mother was charged and convicted upon one count of O.V.I.

{¶8} Mother completed substance abuse treatment on July 3, 2018. However, on July 15, 2018, Mother was heavily intoxicated when she was arrested and charged with domestic violence and assault arising from an incident with her sister. Mother was convicted of a lesser offense of disorderly conduct by fighting.

{¶9} Also in 2018, Mother completed a psychological evaluation by Dr. Gary Wolfgang, who made no further recommendations. The caseworker testified the Agency took issue with Mother's honesty with Wolfgang during the interview and evaluation, and that Mother is generally not truthful with Agency workers, counselors, and therapists.

{¶10} In August 2019, Mother completed another substance abuse program.

{¶11} On December 17, 2019, the Agency filed new complaints seeking a disposition of permanent custody. An expedited/emergency hearing was held on December 18, 2019 and the children were continued in the Agency's temporary custody.

{¶12} On March 5, 2020, the Agency filed a motion for leave to amend its complaint and requested a disposition of legal custody to Paternal Aunt and Uncle. A hearing was scheduled for June 10, 2020.

{¶13} On March 10, 2020, an adjudication/disposition hearing was held; both children were placed in the temporary custody of Paternal Aunt and Uncle and in the Agency's protective supervision.

{¶14} Mother moved to continue the June hearing on the Agency's motion for legal custody to Paternal Aunt and Uncle; the hearing was rescheduled for September 8, 2020.

{¶15} In May 2020, an approved home study was filed for paternal Aunt and Uncle. By agreement of the parties, the children were placed in the temporary custody of Aunt and Uncle and the Agency filed a motion for legal custody to Aunt and Uncle. Less than a year later, however, the Agency withdrew the motion and filed to have the children placed back in the temporary custody of the Agency. Aunt and Uncle no longer sought custody of the children.

{¶16} In August 2020, the Agency moved to continue the legal custody hearing and it was rescheduled for December 9, 2020.

{¶17} In November 2020, Mother completed parenting classes at Muskingum Behavioral Health.

{¶18} On November 18, 2020, an annual review was completed and the children were continued in the temporary custody of Paternal Aunt and Uncle and in the protective supervision of the Agency.

{¶19} On December 9, 2020, a hearing was held on the Agency's motion for legal custody to Paternal Aunt and Uncle; the trial court took the matter under advisement.

{¶20} On January 26, 2021, the Agency filed a motion for temporary custody and for expedited hearing, which was held on February 2, 2021, and the children were placed back into the Agency's temporary custody.

{¶21} In March 2021, Mother completed a mental health assessment at Mid-Ohio, attended two counseling sessions, and failed to complete any further mental health treatment.

{¶22} On April 13, 2021, Mother filed a motion for unsupervised visitation; on April 16, she filed a motion for legal custody. The matters were set for hearing on July 1, 2021.

{¶23} On May 13, 2021, a case review was held and the children were continued in the temporary custody of the Agency.

{¶24} In June 2021, Mother completed the Family Wellness Survival Skills program through Forever Dads.

{¶25} On July 1, 2021, a hearing was held on Mother's motions; the trial court denied Mother's motion for legal custody but placed the children in Mother's temporary custody with protective supervision of the Agency.

{¶26} In October 2021, a hearing was held on Mother's motion for legal custody; the trial court took the matter under advisement and continued all temporary orders.

{¶27} On December 2, 2021, a second annual review was held and the children were continued in Mother's temporary custody and protective supervision of the Agency.

{¶28} On January 1, 2022, Mother was charged with O.V.I. and child endangering for driving under the influence with the children in the vehicle. On January 3, 2022, the

Agency filed a motion for ex parte orders and a request for ex parte hearing; following the hearing, the children were returned to the Agency's temporary custody.

{¶29} On March 4, 2022, the Agency filed a motion for permanent custody of the children and a hearing was scheduled for July 12, 2022.

{¶30} Father requested a home study for his friend, T.M. The home study was denied due to T.M.'s prior Agency and law enforcement involvement regarding her own child, and concerns that Father lived with T.M. despite his denials. The denied home study was filed with the trial court on April 26, 2022.

{¶31} On June 7, 2022, a case review was held and the children were continued in the Agency's temporary custody.

{¶32} On July 12, 2022, the permanent custody hearing was held; Mother was present with counsel.[1]

{¶33} Mother's paramours are an issue for the Agency; the caseworker testified Mother has a pattern of romantic relationships with inappropriate men who have criminal histories and/or substance abuse issues and/or domestic violence issues. At one point, Mother's paramour was Marcus Sullivan, who was on felony probation and had additional pending felonies. The Agency instructed Mother that Sullivan could not be around the children and she claimed he was not; both children reported, however, that Sullivan spent the night at Mother's home during the children's weekend visitation. When confronted, Mother lied. In November 2021, Mother became involved with Kevin Curry, who has a criminal history including child endangering and domestic violence. Mother married Curry

---

[1] Despite having been properly served, Father was not present and no counsel appeared on his behalf.

in May 2022; In June 2022, Curry was sentenced to a prison term of 3 years arising from an Athens County conviction of felony domestic violence. At the time of the permanent custody hearing, Mother was living with and still married to Curry, who failed to complete any case plan services.

{¶34} The caseworker testified that domestic violence has been a constant concern in all of Mother's relationships. Mother was asked to complete domestic violence counseling and did complete an assessment at Muskingum Behavioral Health in April 2020. Mother did not follow through with recommended treatment. In March 2021, Mother began the MOMPPIES group through All Well but did not complete the program. Mother completed another domestic violence assessment with Mid-Ohio in Lancaster, but failed to follow through with recommended treatment. Mother has therefore not completed any domestic violence counseling.

{¶35} The caseworker testified that Mother reports employment but has failed to provide any proof of employment.

{¶36} Mother has not had a valid driver's license from the inception of the case. In November 2018, she was court ordered to not transport the children at any time by car or other vehicle without a valid driver's license. Nevertheless, the caseworker testified Mother had driven with the children in the car multiple times, ignoring the court order and the Agency's recommendations.

{¶37} In its Judgment Entry of November 23, 2022, the trial court found that the case was pending for almost six years; during that time, Mother did attend and complete some substance abuse treatment, parenting classes, and mental health treatment. Overall, however, the trial court determined Mother failed to demonstrate behavioral

changes necessary for her to provide a safe and sober home for the children; she failed to complete domestic violence treatment and continued to put the children at risk in light of her decision-making regarding relationships with abusive men.  The trial court granted the motion for permanent custody to the Agency.

{¶38} Mother now appeals from the trial court's Judgment Entry of November 23, 2022.

{¶39} Mother raises five assignments of error:

**ASSIGNMENTS OF ERROR**

{¶40} "I. THE TRIAL COURT ERRED BY FINDING THAT APPELLANT SUFFERED FROM CHRONIC MENTAL ILLNESS OR CHEMICAL DEPENDENCY THAT IS SO SEVERE THAT IT MAKES THE PARENT UNABLE TO PROVIDE AN ADEQUATE PERMANENT HOME FOR THE CHILD, PURSUANT TO R.C. 2151.414(E)(2)."

{¶41} "II. THE TRIAL COURT ERRED BY FINDING THAT APPELLANT SUFFERED FROM CHRONIC MENTAL ILLNESS OR CHEMICAL DEPENDENCY THAT IS SO SEVERE THAT IT MAKES THE PARENT UNABLE TO PROVIDE AN ADEQUATE PERMANENT HOME FOR THE CHILD, PURSUANT TO R.C. 2151.414(E)(2)."

{¶42} "III. THE TRIAL COURT ERRED BY FINDING THAT THE CHILDREN WERE IN THE CUSTODY OF THE AGENCY FOR MORE THAN TWELVE CONSECUTIVE MONTHS OF A TWENTY-TWO MONTH CONSECUTIVE PERIOD OF TIME."

{¶43} "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT A GRANT OF PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILDREN."

{¶44} "V. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO CONSIDER AND SPECIFICALLY DISCUSS THE FACTORS OF R.C. 2151.414(E) AS IT PERTAINED TO THE BEST INTERESTS OF THE CHILDREN, AS MANDATED BY R.C. 2151.414(D)."

## ANALYSIS

{¶45} Mother's five assignments of error are related and will be addressed together, out of order. She argues the trial court erred in granting the Agency's motion for permanent custody. We disagree.

## Standard of Review

{¶46} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414 that it is in the best interest of the child and any of the following apply:

> (a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

> (b) The child is abandoned.

> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶47} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶48} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶49} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶50} The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *see also C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74.

{¶51} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the

weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also, In re: Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146; *In re: C.W.,* 2nd Dist. Montgomery No. 20140, 2004-Ohio-2040.

### R.C. 2151.414(B)(1)(d)

{¶52} In the instant case, the trial court found that R.C. 2151.414(B)(1)(d) applies to the children, to wit, the children were in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period. In her third assignment of error, Mother argues this finding was in error.

{¶53} The caseworker testified that A.D. turned eight years old in August 2022 and Z.D. would be seven years old in December 2022; when the children were originally removed from Mother's custody, they were 2 years old and 8-9 months old, respectively. The children were in the Agency's temporary custody and placed in foster care from September 2016 until March 2020, when they were placed in the temporary custody of Paternal Aunt and Uncle with protective supervision by the Agency. The children returned to the Agency's temporary custody in February 2021.

{¶54} The children were placed in Mother's temporary custody in July 2021, but were returned to the Agency's temporary custody in January 2022, where they have remained. The caseworker testified that of the almost six years this case was pending, the children lived with Mother for a total of about six months.

{¶55} Mother argues the trial court erred in accruing the time period the children were out of her custody back to the filing of the original complaint in December 2019. Mother's argument is that the 22-month time frame should be counted backward from March 2022, when the children were removed from Mother's temporary custody for the final time. The plain language of R.C. 2151.413(D)(1), though, allows an agency to calculate the period of time a child has been in the temporary custody using any period of a consecutive 22–month period, calculated from the time the child was adjudicated or 60 days after removal of the child from the home. *In re S.R.*, 10th Dist. Franklin No. 05AP-1356, 2006-Ohio-4983, ¶ 23.

{¶56} R.C. 2151.414(B)(1)(d) anticipates that the applicable period of 12 months of temporary custody may accrue in portions. *In re M.Z.*, 9th Dist. Lorain No. 11CA010104, 2012-Ohio-3194, ¶ 10. The statute calls for the accumulation of 12 months of temporary custody over the span of the 22 months directly prior to the filing of the motion for permanent custody. *Id.*, citing *In re C. W.,* 104 Ohio St.3d 163, 2004–Ohio–6411, at syllabus; R.C. 2151.414(B)(1)(d). There is nothing that prohibits a court from looking back to the period of time that passed prior to the date the children were temporarily returned to a parent's care. *Id.*, citing *In the Matter of M.K.,* 12th Dist. Preble No. CA2011–07–003, 2012–Ohio–36, ¶ 63, citing *In re S.R.,* supra; *see also, Matter of A.M.,* 11th Dist. Ashtabula No. 2022-A-0090, 2023-Ohio-671, ¶ 43 ["*** [N]othing ***

prohibits a court from looking back to the period of time that passed prior to the date the children were temporarily returned to a parent's care."]

{¶57} The trial court's finding is supported by clear and convincing evidence and upon review, we agree that R.C. 2151.414(B)(1)(d) is applicable to the facts of this case. Mother's third assignment of error is not well-taken.

### Failure to Remedy Conditions and Parental Placement within a Reasonable Time

{¶58} In her first and second assignments of error, Mother argues the trial court erred in finding the children could not be placed with Mother within a reasonable time because she failed to remedy conditions that caused the children to be removed from the home and suffered from chronic mental illness or chemical dependency so severe that she is unable to provide a permanent home for the children. Mother points to her successes on the case plan and argues that relapses should not be held against her.

{¶59} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher,* 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

{¶60} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Relevant to the instant case, Section (E) provides as follows in pertinent part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental

utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

\* \* \*

(16) Any other factor the court considers relevant.

{¶61} In the instant case, the trial court found Mother failed to successfully demonstrate sobriety despite substance abuse treatment. R.C. 2151.414(E)(2). The trial court further found that despite Mother having completed some substance abuse treatment, parenting classes, and mental health treatment, she failed to remedy the conditions that required the children's removal from the home because in addition to ongoing substance abuse, she continued to engage in relationships involving domestic violence and never completed domestic violence treatment. R.C. 2151.414(E)(1), R.C. 2151.414(E)(16).

{¶62} Mother argues the trial court ignored her "substantial progress" on the case plan. We note this case began with allegations of child abuse of Z.D., including an unexplained fracture, resulting in Mother's conviction of child endangering and falsification. As the case progressed, Mother was charged with domestic violence while intoxicated and eventually pled to disorderly conduct by fighting. As recently as January 1, 2022, Mother was stopped for OVI while she had the children in the car. Mother sought out relationships with domestic violence offenders, married one of them, and lied about these peoples' contact with the children. And still Mother failed to complete any domestic violence treatment.

{¶63} Mother's progress on the case plan pales in comparison to her ongoing bad decision-making which puts the children at serious risk. A parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification. The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. *Matter of J.N.*, supra, 2022-Ohio-4373, ¶ 50. Despite substance abuse treatment, Mother continued to commit crimes while intoxicated (domestic violence, disorderly conduct by fighting, OVI). We find there was sufficient and substantial competent evidence Mother failed to remedy the problems which initially caused the removal of the child from her home. Mother not only failed to complete domestic violence treatment but continued to seek out relationships with domestic violence offenders.

{¶64} The trial court's findings in the instant case are based upon competent credible evidence, including the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

{¶65} The trial court found the Agency made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for the children to return home safely to Mother's home. The trial court found the children cannot or should not be placed with Mother within a reasonable period of time and specifically cited Mother's failure to remedy the problems that initially caused the children to be placed outside the home. R.C. 2151.414(E)(1). The trial court also cited Mother's ongoing substance abuse issues which make Mother unable to provide a stable home. R.C. 2151.414(E)(2). The record supports the juvenile court's finding that Mother has not shown consistent sustained progress to have the child returned to her custody. *Matter of J.N.*, 5th Dist. Licking No. 2022 CA 00033, 2022-Ohio-4373, ¶ 48.

{¶66} Mother's first and second assignments of error are overruled.

**Best interests**

{¶67} Mother further contends the juvenile court erred when it found it was in the best interest of the children to be placed in the permanent custody of the Agency.

{¶68} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶69} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including,

but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶70} Mother argues she substantially complied with the case plan and was able to provide a suitable home for the children because they were in her temporary custody for several months. We note the children were removed from her temporary custody, though, because she drove drunk with the children in the car. Mother argues she maintained a full-time job, but failed to present any such evidence. She claims she "successfully completed substance abuse treatment," but demonstratively failed to maintain sobriety and put the children directly at risk.

{¶71} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re E.H.*, 5th Dist. Stark No. 2022CA00007, 2022-Ohio-1682, 2022 WL 1579856, ¶ 101 quoting *In re Mauzy Children*, 5th Dist. No. 2000CA00244, 2000

WL 1700073 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶72} In this case, we find there was competent, credible evidence to support the juvenile court's decision that it was in the best interest of the children to be placed in the permanent custody of the Agency. The caseworker testified the children are in a foster-to-adopt home where they have thrived and bonded with the foster family. The foster family is capable of meeting the children's needs and both children reported that they want to remain with the foster family. These children deserve permanency, and to put them further at risk in Mother's care would be a grave injustice. Mother has not demonstrated a willingness to maintain sobriety or keep the children safe from paramours with domestic violence convictions.

{¶73} We find that the juvenile court's decision that permanent custody to the Agency was in the children's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence. Mother's fourth assignment of error is overruled.

{¶74} In her fifth assignment of error, Mother argues the trial court's judgment entry does not sufficiently establish its consideration of all relevant factors in its best-interests determination. R.C. 2151.414(D)(1) requires a juvenile court to consider all relevant factors, including but not limited to the five factors set out in R.C. 2151.414(D)(1)(a) through (e), in determining the best interest of a child in a permanent-custody case. In applying that statute, it is preferable for a juvenile court to provide some discussion or analysis of the best-interest factors to aid in appellate review and to increase confidence in its decision, but the statute itself requires only that the court *consider* those

factors, and we may not impose additional requirements beyond the statutory language. *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 42.

{¶75} The trial court found that despite some progress on case plan objectives, Mother has not established that she is a capable or safe parent for the children. Mother has failed to demonstrate sobriety despite some substance abuse treatment. Despite attending domestic violence evaluations, she failed to follow through with treatment and continued to associate with convicted domestic violence offenders whom she exposed to the children. The trial court concluded that despite parenting classes, Mother continues to make poor parenting decisions, places the children in unsafe situations, and exposes them to dangerous people.

{¶76} In the instant case, the record amply demonstrates the juvenile court considered the statutory factors. *Id.* Mother's fifth assignment of error is overruled.

**CONCLUSION**

{¶77} Mother's five assignments of error are overruled and the judgment of the Muskingum County Juvenile Court is affirmed.

By:  Delaney, J.,

Wise, P.J. and

Baldwin, J., concur.